WILLIAMS MACHINE & FABRICATING, INC v OLSON

Docket No. 67797. Submitted May 1, 1984, at Marquette.—Decided October 1, 1984.

Plaintiff, Williams Machine & Fabricating, Inc., brought an action against defendant, Ronald P. Olson, in the Houghton Circuit Court for an injunction compelling defendant to deliver certain shares of common stock to plaintiff for cancellation. Defendant answered, alleging certain equitable defenses, and counterclaimed for money damages for breach of certain oral contracts. The court impaneled a jury to decide the legal issues and to act as an advisory jury with respect to the equitable claims and defenses. Trial proceeded, and, at the close of defendant's proofs, the court, Stephen D. Condon, J., granted a directed verdict on plaintiff's claims. It further refused to allow plaintiff to enter rebuttal evidence against defendant on defendant's counterclaim. The jury returned a verdict for defendant on the counterclaim and the court granted plaintiff a new trial on defendant's counterclaim. Defendant appealed. *Held:*

1. A directed verdict takes a case from the jury's consideration based on a ruling that a party has failed to present evidence of even a prima facie case. Directing a verdict is an improper procedure in equity cases, where the jury, when impaneled, is merely advisory. The court erred in directing a verdict for plaintiff on the equitable claims.

2. The directed verdict may not be viewed as an involuntary dismissal. A motion for involuntary dismissal is for a defendant's use only where, at the close of plaintiff's proofs, plaintiff has failed to prove his case, thereby rendering the production of evidence by the defendant unnecessary.

3. The Court of Appeals declined to review the case *de novo*

REFERENCES FOR POINTS IN HEADNOTES

[1] 27 Am Jur 2d, Equity § 242.
   75 Am Jur 2d, Trial §§ 463, 532.
[2] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit § 41.
   73 Am Jur 2d, Summary Judgment § 13.
[3] 27 Am Jur 2d, Equity § 235.
[4] 76 Am Jur 2d, Trial §§ 1258, 1261.
[5] 5 Am Jur 2d, Appeal and Error § 851.
   58 Am Jur 2d, New Trial §§ 212, 213.

but remanded to the circuit court for further proceedings because defendant was not given an opportunity for closing argument. The right to make a closing argument is a substantial right of a party and obtains in actions in equity. Also the record does not contain findings of fact and conclusions of law, which are required of a judge when acting as the trier of fact, and is incomplete in other respects.

4. The grant or denial of a new trial is within the sound discretion of the trial court which, if not abused, may not be interfered with on appeal. The court did not abuse its discretion in granting a new trial on defendant's counterclaim.

Affirmed in part, reversed in part, and remanded.

1. MOTIONS AND ORDERS — DIRECTED VERDICTS — EQUITY.

A directed verdict takes a case from the jury's consideration based on a ruling that a party has failed to present evidence of even a prima facie case; directing a verdict is an improper procedure in equity cases, where the jury, when impaneled, is merely advisory.

2. MOTIONS AND ORDERS — INVOLUNTARY DISMISSAL — DISMISSAL — COURT RULES.

A motion for involuntary dismissal is for a defendant's use only where, at the close of plaintiff's proofs, plaintiff has failed to prove his case, thereby rendering the production of evidence by the defendant unnecessary (GCR 1963, 504.2).

3. TRIAL — CLOSING ARGUMENT — EQUITY — COURT RULES.

The right to make a closing argument is a substantial right of a party and obtains in actions in equity (GCR 1963, 507.6).

4. TRIAL — NONJURY TRIAL — FINDINGS OF FACT — CONCLUSIONS OF LAW — COURT RULES.

In all actions tried without a jury or with an advisory jury the court has a mandatory duty to find the facts specially and state separately its conclusions of law thereon (GCR 1963, 517.1).

5. NEW TRIAL — APPEAL.

The grant or denial of a new trial is within the sound discretion of the trial court which, if not abused, should not be interfered with on appeal.

*McLean & McCarthy* (by *John M. McCarthy*), for plaintiff.

*Vairo, Mechlin, Tomasi, Johnson & Manchester* (by *Jeryl A. Manchester),* for defendant.

Before: MacKenzie, P.J., and J. H. Gillis and J. B. Sullivan,* JJ.

J. B. Sullivan, J. Defendant, Ronald P. Olson, appeals as of right from a directed verdict in favor of plaintiff, Williams Machine & Fabricating, Inc., on plaintiff's claim, and from an order granting plaintiff a new trial after a jury award for defendant on defendant's counterclaim.

Plaintiff is closely related to a second corporation, Williams Parts & Supply Company. The trial court found both corporations to be "interwoven, intertwined" and that defendant was an employee of both corporations.

Defendant was hired by Williams Parts in 1974, receiving a salary plus commission. In January of 1976, defendant was added to the payroll of plaintiff, Williams Machine, while still receiving a salary from Williams Parts, but no longer receiving a commission.

Around October of 1975, defendant was asked by Walter Williams, plaintiff's chief executive officer, to invest in plaintiff, Williams Machine, "as a sign of good faith" and to help insure defendant's continued employment. Defendant informed Williams that he did not have the money to invest at that time, but he subsequently went to a local bank and obtained an unsecured loan for $10,000, which he turned over to Williams for the purchase of stock. It was at this time, according to defendant's testimony, that Williams made a representation to defendant that, no matter what happened, defen-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

dant would be able to get his investment back plus interest.

Although defendant had paid the money to plaintiff, Williams Machine, in November, 1975, the stock was not issued until April of 1976, when the book value of the shares as of December 31, 1975, was determined; defendant received interest on the money for the intervening period. Defendant received 85 shares in plaintiff, Williams Machine, at that time. Defendant testified that at no time during the purchase discussions was he informed of any transfer restriction on the stock. Nor did any restrictions appear on the face of the stock certificate.

In December of 1976 or January of 1977, defendant agreed to invest an additional $6,000 in plaintiff, Williams Machine. Again, defendant borrowed the money from a local bank. Although the money was paid to plaintiff on January 14, 1977, the shares were not issued until May 16, 1977, again to allow for the closing of financial records. When defendant received the certificate for the second stock purchase, the certificate contained restrictions on transfer.

On May 16, 1977, defendant signed an agreement to restrict the transferability of the stock. Defendant testified that this was the first time he had heard of a stock transfer restriction. Defendant claims that he was told that everyone would have to sign the restrictions. In fact, not all shares were subject to a transfer restriction.

Defendant's employment with both plaintiff, Williams Machine, and with Williams Parts was terminated as of January 1, 1978, and he became an independent contractor making sales on behalf of Williams Parts. In February of 1978, plaintiff sent defendant a letter indicating that, since de-

fendant was no longer an employee of plaintiff, plaintiff would arrange to repurchase defendant's stock. Defendant protested that he felt that he was still an employee of plaintiff, Williams Machine, since 90% of the output of plaintiff, Williams Machine, was sold through Williams Parts, for which defendant was a salesman.

On March 6, 1978, defendant signed a stock purchase agreement which provided for the repurchase of the stock by plaintiff. The agreement did not provide for the precise sum to be paid for the stock. Margaret Dimmer, the corporation secretary, allegedly told defendant that she could not give a precise number until the books were closed, but that it would be about $16,000, the amount he had paid for the stock. He actually received $13,315.96. It appears that defendant surrendered the second stock certificate, for 48 shares (the one containing the stock transfer restrictions), but retained the original certificate for 85 shares.

In 1977, there was a strike in the mining industry which affected plaintiff's business. This necessitated a reduction in salaries of salaried employees of plaintiff. Defendant's salary was reduced by $1,000 per month for the final three months of 1977. Defendant testified that, when Williams informed him of the pay cut, Williams represented that the cut would be repaid when plaintiff's financial condition improved. Defendant never received repayment of the pay cut.

Plaintiff subsequently initiated this lawsuit to compel defendant to deliver the remaining 85 shares of stock. Defendant raised a number of affirmative defenses; however, the only ones which form the basis for this appeal are the defenses of fraud and misrepresentation, ultra vires, and lack of consideration. Defendant also filed a counter-

claim seeking to recover the difference between what he had been promised orally for the stock and that which he actually received and also seeking reimbursement for the salary which was withheld during the strike.

This case involves mixed issues of law and equity. In essence, the equitable claims are those brought by plaintiff and the affirmative defenses of defendant; the claims in law are defendant's counterclaims. The trial court, pursuant to GCR 1963, 509.4, ordered that both the equitable and legal issues be submitted to the jury, with the jury's verdict on the equitable issues being merely advisory. After the close of defendant's proofs, plaintiff brought a motion for a directed verdict. With respect to the motion for a directed verdict on the equitable issues, the court granted the directed verdict in favor of plaintiff. With respect to the motion for directed verdict on the legal issues, the trial court denied the motion.

Defendant argues that the trial court erred in granting a directed verdict on the principal complaint because a prima facie case for his equitable defenses was established and there was a triable issue of fact for the jury. On appeal, plaintiff argues that the motion for a directed verdict should have been more properly treated as a motion to dismiss but, nevertheless, the proper result was reached.

The trial court's use of the directed verdict procedure was inappropriate. A directed verdict can only be had in a jury trial. It's effect is to take the case from the jury's consideration based on a ruling that there is insufficient evidence on which to base a jury verdict because a party has failed to present evidence of even a prima facie case. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46

(1975). Thus, a directed verdict is an improper procedure when the case is in equity and the jury is merely advisory. Of course, the judge may, at any time, remove the case from the advisory jury's consideration because he is never bound to follow an advisory jury's determination, but he should proceed with the case as if there had never been an advisory jury.

Furthermore, contrary to plaintiff's contention, it is inappropriate to consider the motion and decision below as one of involuntary dismissal pursuant to GCR 1963, 504.2. Such a motion is a vehicle for defendant's use only when, at the close of plaintiff's proofs, plaintiff has failed to prove his case, thereby rendering the production of evidence by the defendant unnecessary. *DeNike v Otsego County,* 45 Mich App 711; 206 NW2d 786 (1973).

Finally, the trial court's direction of a verdict cannot be treated as a decision on the merits, even though the judge was the factfinder on the principal complaint, even though both plaintiff and defendant had presented evidence and even though implicit in the trial court's holding that defendant did not make out a prima facie case with respect to his affirmative defenses is the conclusion that defendant did not prove his case by a preponderance of the evidence. The use of the directed verdict procedure was not harmless error because the defendant did not have the opportunity to present his closing argument which is a substantial right of a party. The right to closing argument is embodied in GCR 1963, 507.6. This right obtains in equitable actions. *Abner A Wolf v Walch,* 385 Mich 253; 188 NW2d 544 (1971).

Closing arguments are an opportunity to point out and summarize the evidence, to argue the facts and law, and to pull together the fragmented

pieces of a case in a cohesive and coherent manner. That defendant wanted the benefit of this type of argument is clear from the fact that defendant, after plaintiff's motion for a directed verdict was granted, attempted to summarize the evidence for the judge thinking that the judge overlooked some of it:

"All right. But the points that the court made, I wish to be sure that we review with the court the evidence that I've pointed out in my motion, because as to each of those we did offer testimony. And so, in effect, what the court's saying is either that testimony was not credible and the court is making that determination, or I believe that in making the ruling the court may have overlooked some of the testimony. Just if I could hit the points."

The court then cut defendant off.

That defendant *needed* the benefit of closing argument is clear from the fact that the trial court erroneously held that defendant did not make out a prima facie case of fraud and misrepresentation. The record indicates that defendant has introduced sufficient evidence of both innocent and fraudulent misrepresentation.

Two additional reasons why this Court will not treat the trial court's determination as a decision on the merits and review the case *de novo* is because the record is incomplete due to the fact that plaintiff was precluded from presenting evidence rebutting defendant's claims of misrepresentation and fraud as a result of a justified misunderstanding that he would be allowed to do so on rebuttal. In addition, sufficient findings of fact and conclusions of law were not made by the trial court. Pursuant to GCR 1963, 517.1 the trial judge has a duty to "find the facts specially and state

separately its conclusions of law thereon" in all actions tried upon the facts without a jury or with an advisory jury. This duty is mandatory. *People v Smith,* 101 Mich App 110; 300 NW2d 470 (1980). Although inadequate findings of fact in an equity case does not mandate reversal, *McLain v McLain,* 108 Mich App 166, 171; 310 NW2d 316 (1981), this Court has the option to remand.

Thus, for the foregoing reasons the order directing a verdict for plaintiff on the principal complaint is reversed, and the matter will be remanded to allow for the taking of additional testimony, the final arguments of counsel, and for the rendering of specific findings by the court, or, in the discretion of the court, for a complete new trial on the principal complaint.

This Court will not review the remainder of the issues asserted by the parties on appeal concerning the principal complaint since they were not decided by the trial court. *Brewster v Martin Marietta Aluminum Sales, Inc,* 107 Mich App 639; 309 NW2d 687 (1981).

With respect to the trial court's grant of a new trial on defendant's counterclaims, this Court holds that the order of a new trial was clearly within the trial court's discretion.

"The grant or denial of a new trial is within the sound discretion of the trial court which, if not abused, cannot be interfered with on appeal." *Kailimai v Firestone Tire & Rubber Co,* 398 Mich 230, 232; 247 NW2d 295 (1976).

The trial court appears to have based its grant of a new trial upon the belief that it should not have precluded plaintiff from presenting rebuttal testimony. The trial court's opinion also indicates that it may have believed at the time of denying

rebuttal that plaintiff had merely wanted to present evidence related to the claim for which relief had already been granted and not in opposition to defendant's counterclaim. Since a full development of facts at trial aids in the administration of justice, and the trial court granted the new trial believing it had cut off a full development of those facts, this Court concludes that it was within the discretion of the trial court to grant the new trial.

Reversed in part, affirmed in part and remanded.